# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:09-CR-0380-04** |
| | : | |
| v. | : | **(Judge Conner)** |
| | : | |
| **GREGORIO GARCIA** | : | |

## MEMORANDUM

Presently before the court is a motion (Doc. 131) to suppress evidence, filed by defendant Gregorio Garcia ("Garcia"). The court held an evidentiary hearing on Garcia's motion on April 27, 2010,[1] after which the parties filed supplemental briefing, (see Docs. 155, 162.) For the reasons that follow, the motion will be denied.

## I. **Findings of Fact**[2]

The events underlying the present motion date back to the evening of September 9, 2009, when officers of the Pennsylvania State Police and Franklin County Drug Task Force executed a search warrant at the home of Ricardo Preciado-Rodriguez ("Rodriguez") in St. Thomas, Pennsylvania.[3] (Hr'g Tr. at 15-16.) Six to eight officers participated in the two-hour search, including Keith Kierzkowski ("Agent Kierzkowski"), an agent with the Drug Enforcement Administration, and Jayson Taylor ("Taylor"), a detective with the Franklin County

---

[1] Citations to the April 27, 2010 hearing transcript are abbreviated throughout as "Hr'g Tr."

[2] These findings are based on the court's determination of credible testimony presented at the April 27, 2010 evidentiary hearing.

[3] Rodriguez had been arrested earlier that evening for possession of cocaine and marijuana. (Hr'g Tr. at 3-4.)

district attorney's office. Rodriguez's wife and several small children were present when the officers arrived, but no one at the residence was arrested or placed into restraints of any kind. (See id. at 4-6.)

At some point during the search, Garcia arrived at the residence along with his girlfriend, Brittany Martin ("Martin"), and an older female. (Id. at 4, 6.) The three were permitted to freely enter the home in spite of the police presence. (Id.) Agent Kierzkowski immediately recognized Garcia, as he was in possession of information indicating that Garcia was involved in narcotics trafficking along with Rodriguez. (See id. at 6.) Agent Kierzkowski explained that he viewed Garcia's arrival at the residence as "a good opportunity to ask him a few questions about his involvement" and "Preciado's involvement" in such activity. (Id. at 30.) However, Agent Kierzkowski testified that he did not believe he had probable cause to arrest Garcia, and simply sought to converse with him. (See id. at 8.) Thus, he and Taylor approached Garcia and asked whether Garcia would agree to answer a series of questions out of earshot of the other individuals in the residence. (See id. at 7, 8.) Garcia agreed and the three walked upstairs to a second floor landing area.[4] (Id. at 7, 9.)

---

[4] Garcia claims that Agent Kierzkowski took him by the arm and forcefully led him up to the second floor. (See Hr'g Tr. at 52.) Both officers contradicted this description, stating that Garcia willingly complied with their request. (See id. at 8, 77.) After observing the testimony of each of the witnesses, the court credits the officers' narrative, which was consistent and believable.

When they reached the second floor, Agent Kierzkowski stated that he knew Garcia was involved in Rodriguez's trafficking operation, but that Garcia was not going to be arrested and was not in custody. (See id. at 36-37, 44, 78.) According to the officers, Garcia then provided a detailed statement corroborating Agent Kierkowski's information and furnishing additional detail. (See id. at 10.) In total, the conversation continued for approximately ten to fifteen minutes. (See id. at 10, 78.) At no point were Miranda warnings administered because, as Agent Kierzkowski testified, Garcia was not in custody.[5] (See id. at 10, 13.) At the conclusion of the discussion, Garcia agreed to meet with the officers the following day in order to provide a formal statement. (Id. at 11-12.) He then descended the staircase and exited the residence with Martin. (Id. 12.) Garcia never met with the officers as agreed, but he was arrested on September 16, 2009 for his involvement in drug trafficking offenses. (Id. at 25-26, 40-41.)

On November 18, 2009, Garcia was indicted by a grand jury for offenses related to his alleged drug trafficking activities. He pled not guilty to the charges on January 5, 2010. In the instant motion to suppress, Garcia seeks to exclude the

---

[5] Garcia's account of his interaction with the officers differs materially from the narrative provided by Agent Kierzkowski and Taylor. For example, Garcia claims that Agent Kierzkowski threatened to incarcerate both Garcia and his sister and to "take away the kids" if he failed to cooperate. (See Hr' Tr. at 52.) He also denies that Agent Kierzkowski told him he was not in custody and he claims that he did not feel free to terminate the conversation. (See id. at 53-54.) Furthermore, Garcia estimated that the discussion continued for an hour, and Martin placed the duration at thirty to forty-five minutes. (See id. at 53, 72.) Again, the court credits the testimony of Agent Kierzkowski and Taylor, each of whom independently provided a consistent and credible account of events.

3

statements he provided to Kierzkowski and Taylor on September 9, 2009 during the search of Rodriguez's home. (See Doc. 131.) This motion has been fully briefed and is ripe for disposition.

**II.    Discussion**

In Miranda v. Arizona, the Supreme Court held that law enforcement officers must inform an individual of certain rights before he or she may be subjected to custodial police interrogation. 384 U.S. at 444. These rights include the right to remain silent and the right to have counsel—either retained or appointed—present during questioning. Id. Failure to apprise an individual of his or her Miranda rights may render inadmissible any statements procured by the interrogation. An individual apprised of his or her rights may waive them so long as the waiver is made "voluntarily, knowingly, and intelligently." Id. If a suspect invokes the right to counsel, police must cease interrogation until an attorney is present, Edwards v. Arizona, 451 U.S. 477, 484-85 (1981), and any statements made in counsel's absence must be suppressed, United States v. Tyler, 164 F.3d 150, 162 (3d Cir. 1998).

The mere fact that officers are questioning an individual, however, does not necessarily trigger the Miranda requirements. Rather, the provision of Miranda warnings is mandatory only when officers are interrogating an individual that is in custody. See United States v. Willaman, 437 F.3d 354, 359 (3d Cir. 2006) (citing Miranda, 384 U.S. at 468). An individual is in custody when "there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." United States v. Leese, 176 F.3d 740, 743 (3d Cir. 1999) (quoting California

4

v. Beheler, 463 U.S. 1121, 1125 (1983)). In the absence of a formal arrest or an indication from police officers that an individual is not free to terminate questioning, the custody inquiry turns on whether a reasonable person in the suspect's situation would feel at liberty to end the discussion and leave. See Yarborough v. Alvarado, 541 U.S. 652, 662-63 (2004); United States v. Jacobs, 431 F.3d 99, 105 (3d Cir. 2005). This is an objective inquiry based upon the circumstances of the case at hand. Jacobs, 431 F.3d at 105.

The Third Circuit Court of Appeals has set forth a variety of factors relevant to the custody determination, to wit:

> (1) whether the officers told the suspect he was under arrest or free to leave; (2) the location or physical surroundings of the interrogation; (3) the length of the interrogation; (4) whether the officers used coercive tactics such as hostile tones of voice, the display of weapons, or physical restraint of the suspect's movement; and (5) whether the suspect voluntarily submitted to questioning.

Willaman, 437 F.3d at 359 (quoting United States v. Czichray, 378 F.3d 822, 827 (8th Cir. 2004)). In addition, when officers possess specific information pertaining to a suspect's culpability, courts have observed that there is an increased "tendency to bear down in interrogation and create the kind of atmosphere of significant restraint that triggers Miranda, and vice versa." Jacobs, 431 F.3d at 105 (quoting Steigler v. Anderson, 496 F.2d 793, 799 (3d Cir. 1974)). Finally, revelations by law enforcement that they believe a suspect is guilty may inject a scenario with a coercive element which thereby requires the provision of Miranda warnings. See Stansbury v. California, 511 U.S. 318, 325 (1994) ("An officer's knowledge or beliefs

5

may bear upon the custody issue if they are conveyed, by word or deed, to the individual being questioned."); Jacobs, 431 F.3d at 105 (same).

Examination of the conditions surrounding Garcia's questioning demonstrates that he was not in custody and therefore Miranda warnings were not required. Foremost, Agent Kierzkowski requested permission to speak with Garcia, and explicitly told him that he was not under arrest, that he would not be arrested, and that he was not in custody. Garcia then willingly agreed to engage the officers in conversation, and voluntarily detailed his involvement in drug trafficking activities. Although this discussion occurred outside earshot of the other individuals within the residence, it nonetheless transpired on an open landing area and lasted a mere ten to fifteen minutes. What is more, there is no evidence that either Agent Kierzkowski or Taylor utilized any coercive tactics; their firearms were not visibly displayed, nor is there any credible evidence that either officer raised his voice or threatened Garcia in any way. Quite simply, a reasonable person in Garcia's position would have felt free to terminate the conversation and to leave the premises.[6] Indeed, this is precisely what occurred: At the conclusion of the

---

[6] The primary factor that cuts in Garcia's favor is the fact that Agent Kierzkowski began the conversation by indicating that he knew Garcia was involved in drug trafficking activities. Such a tactic typically tends to add to the custodial nature of questioning, see Jacobs, 431 F.3d at 105, but in this case, every other factor suggests the contrary, see Willaman, 437 F.3d at 360 (holding that questioning was not custodial when officers twice told defendant he was free to leave and did not verbally intimidate him or interrogate him at length).

6

conversation, Garcia was permitted to exit the residence and to depart along with Martin.

In light of the above, the court finds that Garcia was not in custody when he provided Agent Kierzkowski and Taylor with incriminating statements on September 9, 2009. Instead, his statements were voluntarily provided and the Fifth Amendment does not require their exclusion at trial.

## III. Conclusion

For the foregoing reasons, the motion to suppress the statements made by Garcia on September 9, 2009 will be denied.

An appropriate order follows.

     S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated: June 30, 2010

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : CRIMINAL NO. 1:09-CR-0380-04 |
| | : |
| v. | : **(Judge Conner)** |
| | : |
| **GREGORIO GARCIA** | : |

## **ORDER**

AND NOW, this 30th day of June, 2010, upon consideration of the motion (Doc. 131) to suppress evidence, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that the motion (Doc. 131) is DENIED.

                                                S/ Christopher C. Conner
                                                CHRISTOPHER C. CONNER
                                                United States District Judge